# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Terri Tripp, individually and on behalf of all others similarly situated, and on behalf of the ACCT Holdings, Inc. Employee Stock Ownership Plan,<br><br>         Plaintiff,<br><br>   v.<br><br>Board of Directors of ACCT Holdings, Inc, Miguel Paredes, Prudent Fiduciary Services, LLC, Christopher J. Debbas, James R. Griffiths, Joseph Lembo, Hunter Croft, Russell Hughes Jr., and John and Jane Does 1-20,<br><br>         Defendants. | Case No.:<br><br>**COMPLAINT -- CLASS ACTION** |

Plaintiff Terri Tripp ("Plaintiff"), by and through her attorneys, on behalf of herself, all others similarly situated, and the ACCT Holdings, Inc. Employee Stock Ownership Plan, states and alleges as follows:

## I.     <u>NATURE OF ACTION</u>

1.    This is a civil enforcement action brought pursuant to Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3). Plaintiff brings this action on behalf of the ACCT Holdings, Inc. Employee Stock Ownership Plan ("ACCT ESOP," "the ESOP," or "the Plan") and the class of participants and beneficiaries of the ESOP described below. All participants are current or former employees of ACCT Holdings, Inc. ("ACCT" or the "Company"), formerly organized as Advanced Call Center Technologies, LLC, a Pennsylvania-based company that provides, *inter alia*, call center and debt collection services.

2.      An ESOP is an ERISA-protected retirement plan where employees receive retirement contributions as part of their compensation package and those contributions are invested entirely in ACCT stock.

3.      Plaintiff alleges that the ESOP trustee, Miguel Paredes, his firm Prudent Fiduciary Services, Inc. ("PFS"), the Company's Board of Directors and its members (the "Board Defendants"), and the former owners of ACCT ("Selling Shareholders") caused prohibited transactions and breached their fiduciary duties through the planning and consummation of the sale of ACCT to the ESOP (the "ESOP Transaction"). Two of the former owners, Christopher Debbas and James Griffiths (the "Insider Sellers"), were members of the Board of Directors and ESOP fiduciaries. They sold their ACCT stock to the ESOP for an inflated purchase price that far exceeded its fair market value (the "ESOP Transaction"). Paredes, PFS, the Insider Sellers, and the Board Defendants also arranged for continued payments to the Selling Shareholders from the ESOP after the sale.

4.      On December 22, 2021, Defendants caused the ESOP to acquire 17,386,919 shares of ACCT common stock from the Selling Shareholders for $320 million.

5.      Prior to the ESOP Transaction, the employee-participants were not given any information about its terms or the negotiations concerning the price the ESOP would pay for ACCT. In fact, the employee-participants who purchased the ACCT Holding stock had no input on the terms negotiated and agreed to by Paredes, PFS and the Selling Shareholders. Nor did the employees consent to the terms of the ESOP Transaction

6.      According to financial statements filed by the ESOP with the Department of Labor, the value of the acquired shares was only $48.5 million as of year-end 2021. The ESOP's subsequent financial statements filed with the Department of Labor show that the ACCT stock the

ESOP purchased for $320 million was valued as $65 million as of year-end 2022 and $85 million as of year-end 2023 (the last year for which reported data is available). At no point since the ESOP Transaction has the ESOP reported in its governmental filings the ACCT shares are worth anywhere close to what the ESOP paid for them.

7.       Adequate due diligence and evaluation of the ESOP Transaction would have accounted for several risk factors that affected the value of the Company at the time of sale including numerous lawsuits alleging that ACCT violated the Fair Debt Collection Practices Act, the Company's loss of major debt collection clients (e.g., Bank of America) and headwinds in the debt collection industry.

8.       Moreover, a proper evaluation also would have accounted for the governance issues in which the ESOP Transaction was structured, such as (i) the Insider Sellers and Board Defendants would continue to retain control over the Company; (ii) the Insider Sellers and the Board Defendants also retained voting control over the ACCT stock that the ESOP purchased; (iii) almost the entire purchase price was financed through loans which were either guaranteed by the Company or issued directly by the Company to the ESOP; and (iv) the Company was financially burdened with the obligation to make contributions to the ESOP sufficient to make the necessary loan payments, including principal and interest payments to the Selling Shareholders.

9.       Paredes and Prudent Fiduciary Services did not give adequate consideration to these and other factors when it approved the inflated price the ESOP paid of $320 million.  As the ESOP Trustee, Paredes had a fiduciary duty under ERISA to act prudently and in the sole interest of Plan participants, *see* 29 U.S.C. § 1104(a)(1)(A)-(B), and also had a duty to ensure that the ESOP did not engage in prohibited transactions, *see* 29 U.S.C. § 1106.

10.      The Board Defendants were fiduciaries of the ESOP and thus similarly had a

fiduciary duty to prudently appoint and monitor the Trustee in the sole interest of participants, to provide complete and accurate info to the Trustee, and to refrain from engaging in prohibited transactions with the ESOP. However, because some of them were Selling Shareholders, they were deeply conflicted and unable to appropriately carry out appropriate oversight over Paredes and PFS.

11.    Based on the foregoing allegations and the other allegations set forth below, Defendants have breached their fiduciary duties and caused the Plan to engage in prohibited transactions with the Selling Shareholders, resulting in millions of dollars in losses to the Plan and its participants and beneficiaries. Plaintiff brings this action pursuant to ERISA §§ 409(a) and 502(a)(2)-(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), to restore these losses to the Plan, disgorge the monies that the Selling Shareholders unlawfully obtained in connection with the ESOP Transaction, and obtain appropriate equitable relief and other available relief.

## II.    JURISDICTION AND VENUE

12.    **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

13.    **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this district.

14.    **Venue**. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

    a.    Defendants' alleged breaches of fiduciary duty took place in this district at the Company's headquarters located in Berwyn, PA;

    b.    Defendants Christopher Debbas and James Griffiths reside or work in this district; and

    c.    Other Defendants may be found in this district, as ACCT transacts business and employs individuals in Philadelphia and Berwyn, Pennsylvania, and the surrounding area.

### III.     <u>PARTIES</u>

#### A.     <u>Plaintiff</u>

15.     Plaintiff Terri Tripp is a former employee of the Company and a current participant in the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff worked for Advanced Call Center Technologies, LLC and was a Plan participant at the time of the ESOP Transaction. At the time she left the Company, Plaintiff Tripp was 40% vested in the ACCT shares that were allocated to her ESOP account. She has suffered a financial injury as a result of Defendants' unlawful conduct described herein.

#### B.     <u>Trustee Defendants</u>

16.     Defendant Miguel Paredes is the President and Founder of Prudent Fiduciary Services, LLC ("PFS"). Defendant Paredes was appointed the trustee of the ESOP by the ACCT Board of Directors to consummate the ESOP Transaction. At all relevant times Defendant Paredes acted using the resources, systems and personnel of his firm PFS. Paredes created a fiduciary committee of PFS to evaluate the ESOP Transaction and whether the price the ESOP paid was fair. Thus, Paredes and his firm, Prudent Fiduciary Services, LLC, exercised discretion over the ESOP and negotiated and approved the ESOP Transaction on behalf of the ACCT ESOP.

17.     Defendant Prudent Fiduciary Services, LLC ("PFS") is a California Limited Liability Company. PFS markets itself as a provider of professional Independent Fiduciary/ESOP Trustee, ERISA compliance consulting, and expert witness services related to employee benefit plans such as qualified retirement plans and health and welfare plans. PFS's headquarters is at 100 N. Barranca St., West Covina, California 91791. PFS, through its President and owner (Miguel Paredes) and through other high level personnel who served on the fiduciary committee evaluating

the ESOP Transaction took active part in evaluating, negotiating and approving of the Transaction on behalf of the ACCT ESOP.

18.     At the time of the ESOP Transaction, Defendants Paredes and Prudent Fiduciary Services were fiduciaries of the ACCT ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they were and/or acted as the ESOP trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), because they exercised discretionary authority or discretionary control respecting management of the Plan, and/or because they exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

19.     As the ESOP trustee, Defendant Paredes was a named fiduciary, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), under the terms of the written instruments under which the Plan was established and maintained.

20.     At all relevant times, Paredes and PFS were parties in interest to the ESOP within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14) because they were fiduciaries to the ESOP.

**C.    <u>Board Defendants</u>**

21.     Defendant ACCT Board of Directors and its members (collectively "the Board Defendants") had the authority and discretion to appoint the ESOP Trustee and the Plan Administrator, and/or any Special Fiduciary that considers any transaction where the ESOP's Trust will purchase or dispose of Company stock. As a result, the Board of Directors controlled both the administration and assets of the ESOP. See Sections 2.47, 2.51, 11.1 of the ESOP's governing plan document.

22.     The Board of Directors passed a resolution to appoint Miguel Paredes as the ESOP Trustee, and Paredes's agreement provided the Board of Directors the power to remove Paredes as Trustee with or without cause.

23.      Defendant Christopher J. Debbas is the Chairman of the ACCT Board of Directors and has at all relevant times been a member of the ACCT Board of Directors. He is also the co-founder and principal of Julip Run Capital, LLC, through which Debbas sold his stake in ACCT to the ESOP. Through the Trust Agreement, which he signed, Debbas executed a ESOP governance structure such that Paredes was a directed Trustee with respect to most of Paredes's fiduciary powers, including voting the ESOP's stock. Under the Trustee's agreement, the Plan Administrator directed the Trustee and the Plan Administrator was either chosen by the Board or the Company itself which acted through its Board.

24.      Defendant James R. Griffiths, at all relevant times, has been a Director, Chief Financial Officer, Vice President and Treasurer of ACCT. Griffiths signed the ACCT ESOP's governmental filings for 2021, 2022, and 2023 thereby acting as Plan Administrator. He is also the co-founder and principal of Julip Run Capital, LLC. Griffiths sold a substantial stake in ACCT in the ESOP Transaction while retaining control over the Company.

25.      Defendant Joseph Lembo was a Board member and the Chief Executive Officer of ACCT from 2003 until the ESOP Transaction in 2021; afterwards he became the Vice Chairman of ACCT.

26.      Defendant Hunter Croft is the current President and Chief Executive Officer of ACCT, Chairman of the Board of Directors, and has been a top executive of ACCT since at least 2016. An interview of Croft printed in 2022 reported that he "was instrumental in transforming the company from a PE [private equity] funded entity to 100% employee owned.

27.      Russell Hughes Jr. was/is an ACCT Board member, Executive Vice President and Marketing. Based on the Board Defendants' power to appoint the ESOP Trustee and the Board's

actual appointment of Defendant Paredes as Trustee, it had an ongoing duty to monitor Paredes's and PFS's (because Paredes acted through PFS) fiduciary actions pre and post ESOP Transaction.

28.      After the ESOP Transaction, the composition of the Board of Directors did not materially change because the members of the Board of Directors planned to and did retain control of ACCT, prior to and after the ESOP Transaction.

29.      **John and Jane Does 1-10**: Plaintiffs do not currently know the identity of other Board Defendants apart from those identified above. If the identities of those not currently named, if any, are ascertained, Plaintiffs will seek leave to join them under their true names.

30.      The Board Defendants are the ACCT Board itself, its members including John and Jane Does 1-10.

31.      The Board Defendants are fiduciaries of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), because, *inter alia*, they exercised discretionary authority respecting management of the ESOP; exercised authority or control respecting the management of the ESOP's assets; and/or has discretionary authority or discretionary responsibility in the administration of the ESOP.

32.      The Board Defendants had and have a duty to monitor and oversee Miguel Paredes and PFS as the ESOP trustee from the date of his appointment through today.

33.      The Board Defendants are "parties in interest" to the ESOP within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), because they are ACCT directors and they are fiduciaries under ERISA for the reasons alleged above.

**D.      Selling Shareholders**

34.      Defendants Debbas and Griffiths directly or indirectly sold their interest in ACCT in the ESOP Transaction. Together Debbas and Griffiths are referred to herein as the "Insider Sellers."

35.     **John and Jane Does 11-20**: Plaintiffs do not currently know the identity of other Selling Shareholders apart from those identified above. If the identities of those not currently named, if any, are ascertained, Plaintiffs will seek leave to join them under their true names.

36.     Defendants Debbas, Griffiths, and John and Jane Does 1-10 are collectively referred to as the "Selling Shareholders."

## IV.     FACTUAL ALLEGATIONS

### A.     The ESOP and the Company

37.     The ESOP is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). In particular, it is a defined contribution plan under which a separate individual account has been established for each participant. Employees of ACCT or its subsidiaries participate in the ESOP.

38.     As an ERISA-protected ESOP, employer contributions made on behalf of employees are invested in the employer's stock. ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6); *see also* 29 C.F.R. § 2550.407d–6 (definition of the term "employee stock ownership plan").

39.     The employer contributions, invested in employer stock, are part of employee compensation and comprise an important part of employee retirement savings.

40.     The Plan is identified in Department of Labor filings as a "Leveraged ESOP," and it is designed to invest in the employer securities of ACCT.

41.     ACCT was a private equity venture by Julip Run Capital, LLC (primarily owned by Defendants Debbas and Griffiths) and NewSpring Capital. These two private firms purchased Advanced Call Center Technologies, LLC, and created ACCT Holdings, Inc. which billed itself as a large scale customer relationship management business focused on servicing major money center banks, insurance companies, telecommunications companies, and mortgage lenders, including providing debt collection services.

42.     ACCT, acting through the Board of Directors, engaged Defendant Paredes to serve as trustee for the ESOP Transaction. His appointment as ESOP Trustee required Paredes to (among other things) perform thorough due diligence into ACCT's business, loyally negotiate for the best deal for the ESOP, and ensure that the ESOP paid no more than fair market value for the Company.

43.     Defendant Paredes has been the subject of significant litigation stemming from his conduct as an ESOP trustee.

44.     According to the 2023 Form 5500 filed with the Department of Labor, the ESOP purchased 17,386,919 shares of the Company's stock on December 22, 2021 for a total price of $320 million.

45.     To purchase the 17,386,919 shares, the ESOP entered into two separate loans totaling $320 million of debt.

46.     The first loan agreement (the "Initial ESOP Company Loan") provided the ESOP $118,500,000.

47.     The second loan was a $201,500,000 loan from the Selling Shareholders to the ESOP (the "Seller Notes").

**B.     The ESOP Paid More than Fair Market Value for the Company's Stock**

48.     The purchase price that the ESOP paid ($320 million) far exceeded the fair market value of the purchased shares.

49.     The valuation process undertaken by Paredes, PFS and their advisors was flawed and the valuation report upon which they relied was based on unrealistic and inflated projections of ACCT's future cash flows and earnings.

50.     The ESOP's governmental filings state that the valuation of ACCT stock is based on projected free cash flows which, on information and belief, are prepared by the Insider Sellers.

51.     These unrealistic and inflated projections of ACCT's projected free cash flows and

10

earnings were influenced by the Insider Sellers, who stood to (and did) personally profit from any increased value in the stock price paid to them by the ESOP in the ESOP Transaction. The financial and business information provided by the Insider Sellers to Paredes and PFS was subject to known conflicts of interest that were not properly accounted for as part of the valuation process.

52.     The due diligence of Paredes and PFS failed to adequately consider material facts relevant to the valuation and the non-monetary benefits that the Selling Shareholders negotiated for themselves as part of the ESOP Transaction.

53.     First, the $320 million price the ESOP paid failed to fully account for the fact that the Board of Directors and Insider Sellers retained control over ACCT.

54.     In particular, under Section 5.2 of the Trust Agreement, the Plan Administrator—ACCT (acting through its Board of Directors and controlled by the Insider Sellers)—directed Paredes with respect to all fiduciary actions on behalf of the ESOP including directing the voting of unallocated Company shares held by the ESOP. This meant that the Insider Sellers and other Board Defendants could perpetually keep control of ACCT as they directed Paredes on how to vote for Board members, voting ESOP stock is a fiduciary act that must be done in the best interest of the ESOP participants and not to further the interest of the sitting Board Defendants.

55.     Indicative of the fact that control was not passed to the ESOP, the Board of Directors membership pre-and post-ESOP's purchase of ACCT remained the same.

56.     The Company, acting through the Board Defendants, retains the right to remove and replace Paredes as Trustee without cause.

57.     Thus, even though the ESOP ostensibly purchased 100% of ACCT's common stock, the Insider Sellers and the Board Defendants retained control over the Company, including (i) control over voting rights for the ESOP's shares and (ii) supervisory power over Paredes as the

ESOP Trustee who serves at the pleasure of the Board of Directors.

58.     Non-controlling interests trade at a substantial discount (generally over 20% and as much as 40%) relative to a controlling interest in a company.

59.     The price that the ESOP paid and that Paredes approved should have been—but was not adequately reduced—to discount for lack of control, given that the ESOP did not actually obtain full operational control over ACCT or control of the Board of Directors.

60.     The valuation upon which Paredes and PFS relied upon to justify the $320 million price paid by the ESOP did not adequately consider the headwinds for the debt collection industry which were known prior to the ESOP Transaction.

61.     For example, according to the Bureau of Labor Statistics Occupational Outlook Handbook, there were about 258,000 jobs for bill and account collectors as of 2018. The industry, however, was and is expected to experience a decline of about 8% between 2018 and 2028, with a loss of about 19,400 jobs. The reason for this decline, however, is not due to a decreased need for collections activity, but due to the automation of collections work. Automation of human capital likewise affected customer service industry generally.

62.     In addition, it has been reported that "[t]he average delinquency rate—the percentage of accounts 30 to 59 days past due—across all debt categories declined by 38% in the past decade. Payments 60 to 89 days past due saw the largest decrease, falling by 55%, and severely delinquent accounts—those 90 to 180 days past due —saw the second-greatest decline of 44% since 2009."

63.     In 2021 the Consumer Financial Protection Bureau promulgated new rules that regulated how debt collectors can communicate with consumer and the actions they can take.

64.     Further, the ACCT valuation did not adequately address increased regulatory

oversight over debt collection companies and the fact that ACCT's debt collection practices had caused major customers to terminate their relationship with ACCT.

65.     For example, Bank of America, a former large customer fired ACCT after ABC News reported that ACCT agents were caught using racist and obscene phone calls to collect debts from bank customers. A lawsuit was filed against Advanced Call Center Technologies, LLC and a Texas jury found the Company responsible and awarded the plaintiff $1.5 million.

66.     A PACER search shows 88 civil lawsuits filed against Advanced Call Center Technologies, LLC in the relevant period for the valuation report (2012 to 2020). As just one example, in 2020 a class action complaint was filed against Advanced Call Center Technologies, LLC, Christopher Debbas, and Joseph Lembo for violations of the Fair Debt Collection Practices Act.

67.     The price that the ESOP paid and that Paredes approved failed to properly account for the risk of continued loss of business that ACCT faced in 2021.

68.     The valuation report should have considered and utilized information about recent expressions of interest or offers by third parties to purchase ACCT from the Sellers.

69.     Ultimately the terms of the ESOP Transaction did not appropriately ensure that the ultimate value of the shares allocated to ESOP participants are worth the amount paid per share by the ESOP, plus a reasonable rate of return.

### C.     The ESOP Transaction Imposed Significant Ongoing Financial Burdens on the ESOP and the Company

70.     The ESOP Transaction was also problematic because it imposed significant ongoing financial burdens on the ESOP and the Company that was being purchased.

71.     As noted above, the ESOP Transaction was financed with two separate loans totaling $320 million. Due to the size of these loans and the inflated purchase price, the ESOP was

underwater on the ESOP Transaction from the moment the ESOP Transaction was consummated.

72.    Further, the Company's guarantee of the Seller Notes impaired ACCT's stock value because the loan is classified as debt on ACCT's balance sheet and is a charge to shareholders' common equity.

73.    ACCT also assumed the risk of nonpayment in connection with the Company's loan to the ESOP.

74.    Additionally, under the terms of the ESOP Transaction, ACCT is obligated to make contributions to the ESOP in an amount sufficient to cover both loan payments, resulting in a significant cash drain on the Company. These retirement contributions that the Company is required to make to service the ESOP's debt have significantly impaired ACCT's cash flows and earnings after the ESOP Transaction, and ultimately its value.[1]

75.    This cash drain is magnified by the Company's obligation to buy any shares of its stock distributed to participant accounts that participants are entitled to sell, i.e., the Company has repurchase obligations to participants under the ESOP's plan terms.

76.    None of this was adequately accounted for by Paredes in approving the ESOP Transaction.

77.    Consistent with its fiduciary obligations under ERISA, Paredes was required to ensure that the ESOP did not pay more than fair market value for ACCT stock taking into account all aspects of the ESOP Transaction. However, Paredes failed to do so, and overlooked many

---

[1] The retirement contributions made to employee individual accounts are an important part of ACCT employee compensation under ERISA. *See* 26 U.S.C. § 404; 26 C.F.R. § 1.404(a)-1(b). Yet, to the extent that they are used to make interest payments, they result in no appreciable benefit to Plan participants and crowd out the Company's ability to offer other types of compensation to its employees.

important facts (as discussed above) that should have caused it to more critically examine the stock appraisal and the valuation of $320 million for ACCT.

78.    Paredes also failed to adequately consider the related ESOP loan terms and Company contribution obligations, and their implications for the ESOP Transaction.

79.    Had Paredes adequately considered all material facts, it would have recognized that (a) the purchase price was inflated, (b) it was not prudent and in ESOP participants' interest to complete the ESOP Transaction, and (c) the ESOP Transaction was designed to enrich the Insider Sellers rather than benefit Plan participants and their beneficiaries.

### D.    The Selling Shareholders Failed to Exercise Appropriate Care and to Consider the Interests of Participants in Monitoring Paredes as Trustee

80.    The Board Defendants  also failed to prudently monitor Paredes and ensure that he complied with his ERISA fiduciary duties and properly evaluated the ESOP Transaction. To the contrary, the Board Defendants sought to convince Paredes to approve the ESOP Transaction, even though they knew from their vantage point as Company insiders that the purchase price was inflated and the ESOP Transaction was not in participants' interests.

81.    Because the Board of Directors were at the highest levels of Company management, each of them was involved in the preparation of financial projections and other information used in appraisals of ACCT stock. This included involvement in the preparation of financial projections for ACCT's future cash flows and earnings that the Board Defendants and Insider Sellers knew or had reason to know to be overly optimistic, and which formed the basis of the stock appraisal relied upon by Paredes in approving the price paid by the ESOP.

82.    The Board Defendants (including the Insider Sellers) were be involved in the creation of ESOP's financial information before and after the ESOP Transaction. The ESOP's financial statements expressly state that ACCT's "[m]anagement is responsible for the preparation

and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error."

83.     The Board Defendants and the Insider Sellers were aware of all facts alleged herein because they were high level Company executives who were privy to the relevant events and had access to all relevant information. At no point did they take any remedial action or remove Paredes as Trustee.

E.    **Selling Shareholders Have Retained the Ill-Gotten Gains Received from the ESOP Transaction**

84.     On information and belief, each of the Selling Shareholders deposited their share of the proceeds from the ESOP Transaction in their personal account, and each such account continues to exist in the possession of the Seller Shareholders.

85.     Additionally, the Plan Document contemplated that some or all of the Seller Defendants would invest the proceeds of the ESOP Transaction in "qualified replacement property" pursuant to Section 1042 of the Internal Revenue Code ("I.R.C."), in order to avoid capital gains tax on the sale of their ACCT stock to the ESOP. Under I.R.C. § 1042, the gains on the sale of stock to the ESOP are taxed when the qualified replacement property is sold, and capital gains taxes can be eliminated entirely if the qualified replacement property is held by the Selling Shareholders until death. On information and belief, the Selling Shareholders who invested the proceeds in qualified replacement property continue to hold such property to avoid the adverse tax consequences.

86.     Each Seller Defendant who sought deferral of capital gains pursuant to I.R.C. § 1042 was required to complete a signed Statement of Purchase that identified and declared the

specific securities that represent the qualified replacement property that was purchased to avoid taxes on the receipt of proceeds from the ESOP Transaction. The Statement of Purchase for each Seller Defendant who elected I.R.C. § 1042 deferral would be filed with their tax return.

## V.    PLAINTIFFS SEEK PLAN-WIDE RELIEF

87.    Plaintiff brings these claims for plan-wide losses and other plan-wide relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

88.    Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the following class:[2]

> All participants in the ACCT Holdings, Inc. Employee Stock Ownership Plan on or after December 22, 2021 who vested in whole or in part under the terms of the ESOP, and those participants' beneficiaries, excluding Defendants and their immediate family members; any fiduciary of the ESOP; and any current or former officers or directors of ACCT or its affiliates.

89.    **Numerosity.** The Class is so numerous that joinder of all class members is impracticable. The ESOP governmental filings report 7,499 participants at the beginning of 2023 and the number has likely increased since then.

90.    **Commonality.** This case presents numerous common questions of law and fact, including but not limited to:

> a.    Whether Paredes is an ERISA fiduciary, and the scope of his fiduciary duties;
>
> b.    Whether PFS is an ERISA fiduciary, and the scope of its fiduciary duties;
>
> c.    Whether the Board of Directors is/are ERISA fiduciaries, and the scope of their fiduciary duties;
>
> d.    Whether the Insider Sellers are ERISA fiduciaries, and the scope of their fiduciary duties;
>
> e.    Whether Paredes or PFS breached its fiduciary duties under ERISA;

---

[2] Plaintiff reserves the right to propose other or additional classes or subclasses in her motion for class certification or subsequent pleadings in this action.

f.     Whether the Board of Directors or Insider Sellers breached their fiduciary duties under ERISA;

g.     Whether the Board of Directors or Insider Sellers are parties in interest as defined by ERISA;

h.     Whether the ESOP Transaction was a prohibited transaction under ERISA;

i.     Whether the ESOP paid fair market value for the purchased shares of ACCT;

j.     Whether the post-sale loan payments to the Insider Seller were prohibited transactions under ERISA;

k.     The amount of losses suffered by the ESOP as a result of the unlawful conduct alleged herein;

l.     The proper form of equitable and injunctive relief; and

m.    The extent to which any non-fiduciary Defendants are subject to equitable remedies and relief.

91.    **Typicality.** Plaintiff's claims are typical of the claims of other class members because (among other things): (a) Plaintiff was employed by ACCT and was a participant in the ESOP; (b) Plaintiff was treated consistently with other ESOP participants; (c) Plaintiff suffered the same injuries as other ESOP participants on account of the ESOP's overpayment for ACCT stock; and (d) Plaintiff seeks relief on behalf of the Plan as a whole rather than relief that is unique to herself.

92.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the class. Plaintiff's interests are aligned with the class she seeks to represent, and she is committed to the vigorous representation of the class. Plaintiff's undersigned counsel is experienced in ERISA litigation and other complex class action litigation. Plaintiff has no interests antagonistic to or in conflict with the interests of the class that would impair her ability to represent the class.

93.    **Rule 23(b)(1)(A).** Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecution of separate actions by individual class members would create the

risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants relating to the ESOP.

94.    **Rule 23(b)(1)(B).** Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of other ESOP participants and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the class. Further, the relief granted by the Court, including any equitable relief, injunctive relief, or accounting of profits, may be dispositive of the interests of other class members.

95.    **Rule 23(b)(2).** Additionally or alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

96.    **Rule 23(b)(3)**. Additionally or alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all class members predominate over any questions affecting individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions because Defendants' duties and obligations were uniform with respect to all ESOP participants and therefore all members of the class. Further, Plaintiff and all class members have been similarly harmed by the ESOP paying more than fair market value for ACCT stock in the ESOP Transaction, and common questions as to remedies will also predominate over any individual issues (particularly since relief is sought on behalf of the Plan as a whole). Class members do not have an interest in

pursuing separate actions against Defendants, as this action is brought on behalf of the Plan and the amount of any individual claims would be relatively small compared to the expense and burden of individual prosecution. Plaintiff is unaware of any similar claims brought against Defendants by any class members individually. Class certification will be efficient and eliminate the need for unduly duplicative litigation to remedy the unlawful conduct alleged herein. Management of this action as a class action will not present any likely difficulties and is in the best interest of the named parties, the class, and the Court.

## VI.    CAUSES OF ACTION

### Count I
### Breach of Fiduciary Duties Under ERISA §§ 404(a)(1)(A) and (B),
### 29 U.S.C. §§ 1104(a)(1)(A) and (B)
### (Against Paredes and PFS)

97.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

98.    Defendant Paredes was a fiduciary to the Plan by virtue of his appointment and role as the ESOP Trustee.

99.    Defendant PFS was a fiduciary because PFS's President and owner (Paredes) acted through PFS in evaluating and approving the ESOP Transaction as further alleged above.

100.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries … of the plan."

101.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

102.    In the context of a sale of a company/employer to an ESOP, the duties of loyalty

under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to ensure that the ESOP and its participants pay no more than adequate consideration for the company's assets and the participants' accounts in the ESOP.

103.    Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with DOL regulations.

104.    Paredes and PFS were required to undertake appropriate and independent due diligence and to adequately investigate the fair market value of the ACCT stock before approving the ESOP Transaction to ensure the ESOP did not overpay for ACCT stock. Among other things, Paredes and PFS were required to (i) conduct a thorough and independent review of the valuation of ACCT stock (i.e., the stock appraisal) to make sure that reliance on that valuation was reasonably justified under the circumstances of the ESOP Transaction; (ii) to investigate the reliability and reasonableness of the management projections for ACCT's future revenue, earnings, and cash flow upon which the discounted cash flow method used in the appraisal was based; (iii) to investigate any business, operational or other issues that posed risks to ACCT achieving management's projections; (iv) make an objective effort to evaluate and test the valuation reports and opinions, and question any uncertain methods and assumptions; (v) to identify, question, and test the underlying financial data and assumptions; (vi) to verify that the conclusions are consistent with the data and analyses, and actual documented business prospects.

105.    Paredes and PFS were required to carefully consider the ACCT's ability to meet the extreme debt obligations it took on to fund the ESOP Transaction. A prudent investigation and evaluation of the ESOP Transaction would have considered scenarios where ACCT did not meet

it projected EBITDA or if certain assumptions in the valuation report were changed to determine whether ACCT (the ESOP's only asset) would remain solvent in that scenario. As alleged above, a prudent and loyal investigation of all the relevant terms, financial projections, and assumptions in connection with the ESOP Transaction would have revealed that the aggregate ESOP Transaction price of $320 million was greater than the fair market value of the ACCT stock at the time of the ESOP Transaction.

106.    A prudent and loyal investigation by Paredes and PFS also would have revealed that it was imprudent to approve the debt structure of the ESOP Transaction.

107.    A prudent and loyal investigation by Paredes and PFS would have further revealed that the ESOP Transaction terms, taken together, were not in the best interest of ESOP participants.

108.    By failing to act prudently and loyally in participants' best interests in connection with the ESOP Transaction, and by approving the ESOP Transaction and failing to restore the losses caused thereby, Paredes breached his fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), and caused losses to the ESOP and the retirement accounts of ESOP participants.

109.    Paredes and PFS are liable to restore these losses and for other appropriate relief under ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3), and ERISA § 409, 29 U.S.C. § 1109, as a result of these fiduciary breaches.

**Count II**
**Improper Fiduciary Appointment and Monitoring**
**in Violation of ERISA §§ 404(a)(1)(A) and (B),**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**
**(Against Board Defendants)**

110.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

111.    The Board Defendants had the power to appoint, and did appoint Miguel Paredes as the Trustee of the ESOP.

112.     The Board Defendants have the power to remove the Trustee with or without cause.

113.     Following Paredes's appointment, the Board Defendants retained the power to remove Paredes as the ESOP Trustee, but elected to preserve him in that role at all relevant times.

114.     Company board members who are responsible for the selection and retention of Plan fiduciaries are themselves fiduciaries with respect to the Plan and are subject to ERISA's duties of loyalty and prudence with regard to the selection and retention of their appointed fiduciaries. *See* 29 C.F.R. § 2509.75-8 (D-4).

115.     The Board Defendants breached their fiduciary duties in connection with the appointment of Paredes as the ESOP Trustee by failing to adequately monitor Paredes and PFS.

116.     After appointing Paredes to serve in this role, the Board Defendants had an ongoing obligation to monitor Paredes to ensure that he was acting in compliance with statutory standards under ERISA. *See* 29 C.F.R. § 2509.75-8 (FR-17). However, the Board Defendants failed to do so and looked the other way when Paredes approved the ESOP Transaction for a sale price that far exceeded the fair market value of the shares that were purchased.

117.     Among other things, the Board Defendants:

  a.     failed to make sure that Paredes and PFS had adequate controls over its fiduciary processes, including protections to ensure that it hired competent valuation advisors and did not unreasonably rely on flawed valuations;

  b.     failed to make sure that Paredes, PFS, and its advisors received all material information in connection with the ESOP Transaction, including information relating to potential business risks;

  c.     failed to make sure that Paredes and PFS received accurate information and realistic financial projections for due diligence;

  d.     failed to make sure that Paredes and PFS fully considered all relevant factors with respect to the ESOP Transaction;

  e.     failed to monitor Paredes's and PFS's fiduciary processes;

  f.     failed to review and evaluate the performance of Paredes and PFS, or have

a system in place for doing so;

g.      failed to remove Paredes when they knew that his performance was inadequate for the reasons described herein; and

h.      failed to ensure that Paredes took appropriate remedial action after the ESOP Transaction.

118.    The Board Defendants are liable for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3), for their failure to appropriately appoint and monitor Paredes as the ESOP Trustee in a manner consistent with ERISA's fiduciary standards.

**Count III**
**Prohibited Transactions in Violation of ERISA § 406, 29 U.S.C. § 1106**
**(Against Paredes and PFS)**

119.    Plaintiff incorporates the preceding paragraphs as though set forth herein, including but not limited to the preceding allegations regarding Paredes's and PFS's fiduciary status.

120.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

121.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), further provides that a plan fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes the direct or indirect loan of money between the plan and a party in interest.

122.    ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include

- "any fiduciary … of such employee benefit plan"

- "an employer any of whose employees are covered by such plan"

- "an employee, officer, director … or a 10 percent or more shareholder" of an employer whose employees are covered by the ESOP

- "a relative (as defined in paragraph (15)) of any individual described in subparagraph (A), (B), (C), or (E)[.]"

29 U.S.C. § 1002(14)(A), (C), (H), and (F).

123.    The Selling Shareholders are parties in interest to the ESOP within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14) because, *inter alia*, they were fiduciaries to the Plan; employees, officers, directors, and/or large shareholders of the Company whose employees were covered by the Plan; and relatives of Plan fiduciaries.

124.    The Company is also a party in interest to the ESOP because it is an employer whose employees are covered by the Plan.

125.    Paredes, acting as the Trustee of the ESOP and a fiduciary of the ESOP, approved and caused the ESOP to purchase ACCT stock from parties in interest to the ESOP. This was a prohibited transaction because the ESOP Transaction constituted an exchange of property between the ESOP and the Selling Shareholders in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Selling Shareholders in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

126.    Thereafter, each individual payment to the Selling Shareholders by the ESOP constituted another exchange of property between the ESOP and the Selling Shareholders in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Selling Shareholders in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

127.    As Trustee, Paredes also caused the ESOP to borrow over $320 million from the Company and the Selling Shareholders, which constituted separate prohibited transactions in

violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

128.　Each payment by the ESOP of principal or interest to the Selling Shareholders or to the Company in connection with these loans constitutes an independent violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

129.　Paredes and PFS knew or should have known that the foregoing transactions were prohibited.

130.　The foregoing prohibited transactions are not subject to any exemptions under ERISA § 408, 29 U.S.C. § 1108. The Selling Shareholders received more than fair market value in connection with the sale of the Company and also in connection with the Seller Notes.

131.　Defendants Paredes and PFS are liable for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3), for the prohibited transactions set forth herein.

**Count IV**
**Prohibited Transactions in Violation of ERISA § 406, 29 U.S.C. § 1106**
**(Against Selling Shareholders)**

132.　Plaintiff incorporates the preceding paragraphs as though set forth herein, including but not limited to the preceding allegations regarding the Selling Shareholders' status as fiduciaries and parties in interest.

133.　ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

134.　ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), further provides that a plan

fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes the direct or indirect loan of money between the plan and a party in interest.

135.    The ESOP's purchase of 100% of the issued and outstanding common stock of ACCT from the Selling Shareholders constituted a direct or indirect exchange of property between the ESOP and parties in interest in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of ESOP assets to the Selling Shareholders in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

136.    Thereafter, each individual payment to the Selling Shareholders by the ESOP constituted another indirect exchange of property between the ESOP and the Selling Shareholders in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Selling Shareholders in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

137.    The Seller Notes and ESOP Company Loan constituted separate prohibited transactions in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

138.    Each payment by the ESOP of principal or interest to the Selling Shareholders or to the Company in connection with these loans constitutes an independent violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

139.    The Selling Shareholders knew or should have known that the foregoing transactions were prohibited.

140.    These foregoing prohibited transactions are not subject to any exemptions under ERISA § 408, 29 U.S.C. § 1108. The Selling Shareholders received more than fair market value in connection with the sale of the Company and also in connection with the Seller Notes.

141.    Because the Selling Shareholders breached their fiduciary duties in failing to

monitor Paredes's and PFS's actions during the relevant period (see Count II above) each of them caused the numerous prohibited transactions alleged in this Count, and are liable for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), in connection with those prohibited transactions.

142.    Alternatively, if the Selling Shareholders are not found to be fiduciaries who caused the prohibited transactions alleged in this Count, they are still liable for equitable relief under *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) because each of them knowingly participated in the prohibited transactions and Paredes's and PFS's fiduciary breaches as described herein:

- As owners and leaders of the Company, the Selling Shareholders were involved in and directed the preparation of the financial projections underlying the stock appraisal relied upon by Paredes and PFS which was the basis of the purchase price the ESOP paid for the Company.

- Given their role in the preparation of the Company's financial statements and its operations for many years, the Selling Shareholders knew that the financial and business projections underlying the stock valuation were unrealistic and unreliable and that the purchase price exceeded the fair market value of the Company.

- The Selling Shareholders knew that the risk that was not properly accounted for in the valuation of $320 million.

- The Selling Shareholders knew that, despite selling 100% of the Company's shares outstanding to the ESOP, they the Board Defendants retained control over the Company due to their ability to direct the voting of the ESOP shares, their ongoing control over the Board of Directors, and their ability to remove and Paredes as Trustee without cause.

- The Selling Shareholders knew that the ESOP Transaction was highly leveraged, and the Company bore all risk of default in connection with the underlying loans.

- The Selling Shareholders knew that the Company was obligated to make contributions to the ESOP in an amount sufficient to cover the principal and interest payments on the loans, which functioned as a significant drag on its working capital.

- Based on their knowledge, position, and unique access to the Company's financial

and business information, the Selling Shareholders knew that Paredes had no basis for approving the ESOP Transaction or the continuing payments to the Selling Shareholders, but participated in the ESOP Transaction and accepted those continuing payments anyway in conscious disregard of the ERISA violations described herein.

143.     Accordingly, the Selling Shareholders are liable as non-fiduciary parties in interest for disgorgement and other appropriate equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## Count V
## Co-Fiduciary Liability Under ERISA § 405(a), 29 U.S.C. §§ 1105(a)
## (Against Board Defendants and Insider Sellers)

144.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

145.     ERISA § 405(a), 29 U.S.C. § 1105(a) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan … if he participates knowingly in … an act or omission of such other fiduciary; … has enabled or [] he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

146.     As discussed above, the Board Defendants and Insider Sellers had knowledge of Paredes's fiduciary breaches and the prohibited transactions set forth herein, and knowingly participated in and facilitated those prohibited transactions. *See supra*.

147.     The Board Defendants and Insider Sellers made no effort, much less reasonable efforts, to remedy those fiduciary breaches and prohibited transactions.

148.     Based on the foregoing, the Board Defendants and Insider Sellers are liable as co-fiduciaries under ERISA § 405(a), 29 U.S.C. § 1105(a), for Paredes's fiduciary breaches and other ERISA violations, and subject to appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3).

## Count VI
### Liability Under ERISA § 410(a), 29 U.S.C. § 1110(a)
### (Against Board Defendants, Paredes and PFS)

149.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

150.    ERISA § 410(a), 29 U.S.C. § 1110(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."

151.    Indemnification agreements requiring a company owned by an ESOP to indemnify the ESOP fiduciaries are prohibited as they "would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations." 29 C.F.R. § 2509.75-4.

152.    The Trust Agreement entered into by Paredes and the Board Defendants states that the Trustee shall be indemnified by the Company against any loss, liability, or expenses (including attorneys' fees) actually incurred or paid by the Trustee in connection with the defense of any actions arising from the ESOP Trust Agreement.

153.    The Plan Document states that "Each person who serves as Plan Administrator and any person who is an employee or director of the Company or an affiliated company shall be indemnified by the Company against expenses incurred by him or her in connection with any action to which he or she may be a party by reason of his or her performance of administrative functions and duties under the Plan."

154.    These provisions are void under ERISA § 410(a), 29 U.S.C. § 1110(a), as applied to any liability in this case.

155.    Defendant Paredes and PFS are fiduciaries to the ESOP within the meaning of

ERISA § 3(21), 29 U.S.C. § 1002(21).

156.    The Board Defendants are fiduciaries to the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

157.    If the indemnification provision set forth above were exercised to indemnify Paredes or the Board Defendants for the ERISA violations alleged in this case, it would abrogate the ESOP's right to recovery from a breaching fiduciary and effectively require the ESOP to bear the cost of liability itself.

158.    Plaintiff seeks appropriate relief under ERISA §§ 502(a)(2) and/or 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and/or 1132(a)(3), to enjoin Defendants from relying on this indemnification provision in connection with any liability or costs of defense in this case.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the class, prays that judgment be entered against Defendants on each Count and that the Court grant all available relief to address the ERISA violations referenced herein, including (among other things):

A.    Declaring that Paredes, PFS, the Board Defendants and the Insider Sellers have each breached their fiduciary duties under ERISA;

B.    Enjoining Paredes, PFS, the Board Defendants and the Insider Sellers from further violations of their fiduciary responsibilities, obligations, and duties;

C.    Removing Paredes as the Trustee of the ACCT ESOP and barring him from serving as a fiduciary of the ESOP in the future;

D.    Appointing a new independent fiduciary to manage the ACCT ESOP and ordering the costs of such independent fiduciary be paid for by Defendants;

E.    Ordering each fiduciary found to have violated ERISA to restore all plan-wide losses resulting from their fiduciary breaches and to disgorge all plan-wide profits made through use of assets of the ESOP;

F.    Ordering that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to providing an accounting for profits, ordering surcharge against Defendants to restore losses to the ESOP, rescinding or reforming the ESOP

Transaction, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

G.    Enjoining Defendants from seeking indemnification or exculpation from ACCT or the ACCT ESOP for their violations of ERISA;

H.    Enjoining the Selling Shareholders from dissipating any of the proceeds they received from the ESOP Transaction held in their actual or constructive possession until the ESOP participants' rights can be adjudicated;

I.    Enjoining the Selling Shareholders from transferring or disposing of any of the proceeds they received from the ESOP Transaction to any person or entity, which would prejudice, frustrate, or impair the ESOP participants' ability to recover the same;

J.    Requiring Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the class;

K.    Awarding pre-judgment interest and post-judgment interest; and

L.    Awarding such other and further relief that the Court determines to be appropriate pursuant to ERISA § 502(a)(2) and/or § 502(a)(3), 29 U.S.C. § 1132(a)(2) and/or 1132(a)(3), or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, or that is otherwise equitable and just.

Dated: January 23, 2025

Respectfully submitted,

*/s Raymond M. Sarola*

Raymond M. Sarola (PA Bar No. 318164)
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
Two Logan Square
100-120 N. 18th Street
Suite 1820
Philadelphia, PA 19103
Tel: (267) 479-5706
Fax: (267) 479-5701
rsarola@cohenmilstein.com

Michelle C. Yau (*Pro Hac Vice* forthcoming)
Daniel R. Sutter (*Pro Hac Vice* forthcoming)
Ryan A. Wheeler (*Pro Hac Vice* forthcoming)
Jacob T. Schutz (*Pro Hac Vice* forthcoming)
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com
rwheeler@cohenmilstein.com
jschutz@cohenmilstein.com